UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHAD A.D.,

                              Plaintiff,

                                                      8:21-CV-0325
v.                                                    (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                             HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION                LOUIS JOHN GEORGE, ESQ.
OFFICE OF GENERAL COUNSEL                     Special Assistant U.S. Attorney
  Counsel for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Chad A.D.("Plaintiff") against the

Commissioner of Social Security ("Defendant" or "Commissioner") seeking Title II Disability

Insurance benefits, are the parties' motions for judgment on the pleadings.  (Dkt. Nos. 13, 17.)

For the reasons set forth below, the Court affirms Defendant's decision and dismisses this action.

I.      RELEVANT BACKGROUND

        A.      Relevant Facts

Plaintiff was born in 1985, making him 32 years old at his application filing date and 34 years old at the date of the ALJ's decision.  Plaintiff reports having a high school education.  Plaintiff alleges disability due to depression, anxiety, radiculopathy, failed-low-back syndrome, and degenerative disc disease.

**B.      Relevant Procedural History**

On December 18, 2017, Plaintiff applied for Supplemental Security Income ("SSI").  On March 8, 2018, Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("ALJ") Elizabeth Koennecke.  On October 7, 2019, Plaintiff appeared at an in-person hearing before ALJ Koennecke.  On December 19, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 10-19.)[1]  On January 26, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1.)

**C.      The ALJ's Decision**

Generally, in her decision, the ALJ made the following eleven findings of fact and conclusions of law.  (T.12-19.)  First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015.  (*Id*. at 12.)  Second, the ALJ found that Plaintiff did not engage in substantial gainful activity for purposes of 20 C.F.R. § 404.1571, et. seq., through his date last insured (which was December 31, 2015).  (*Id*. at 13.)  Third, the ALJ found that, through the date last insured, Plaintiff had the following severe

---

[1]      The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

impairment pursuant to 20 C.F.R. § 404.1520(c): lumbar radiculopathy. (*Id*. at 13-14.) Fourth, the ALJ found that, through the date last insured, Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"), including Listing 1.04 (disorders of the spine). (*Id*. at 14.) Fifth, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity to perform the full range of light work for purposes of 20 C.F.R. § 404.1567(b). (*Id*. at 14-18.) Sixth, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work as a repairperson/demolition engineer for purposes of 20 C.F.R. § 404.1565. (T. 18.) Seventh, the ALJ found that Plaintiff was born in 1985 and was 30 years old on the date last insured, which is defined as a younger individual age 18-49 pursuant to 20 C.F.R. § 404.1563. (*Id*.) Eighth, the ALJ found that Plaintiff has at least a high school education and is able to communicate in English for purposes of 20 C.F.R. § 404.1564. (*Id*.) Ninth, the ALJ found that the transferability of job skills is not material to the determination of disability here because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not Plaintiff has transferable job skills. (*Id*.) Tenth, the ALJ found that, through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed for purposes of 20 C.F.R. §§ 404.1569 and 404.1569(a). (*Id*. at 18-19.) Eleventh, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, through his date last insured for purposes of 20 C.F.R. § 404.1520(g). (*Id*. at 19.)

        **D.**      **The Parties' Briefing on Their Motions**

                **1.**      **Plaintiff's Motion for Judgment on the Pleadings**

Generally, in his memorandum of law, Plaintiff asserts two arguments. (Dkt. No. 13, at 8-9.)  First, Plaintiff argues that the ALJ's Listing analysis is insufficient because she wholly failed to provide any explanation of which (if any) of the five requirements under Listing 1.04 Plaintiff's spinal impairments did not meet or medically equal and why: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness); (4) sensory or reflex loss; and (5) positive straight-leg-raising test (sitting and supine). (*Id*. at 8.)

Indeed, Plaintiff argues, even if the ALJ had provided this explanation, it would not suffice, because the medical record shows that Plaintiff's spinal impairments supported the five above-referenced requisite findings.  (*Id*.)  For example, Plaintiff argues, the nerve conduction study of July 30, 2015, by Dr. Edward Reason, DO, shows that Plaintiff had S1 radiculopathy, which is evidence of the required nerve root compression.  (*Id*.)  Plaintiff argues that his Emergency Room records of February 12, 2010, state that he reported having low back pain, which is evidence of the required neuro-anatomic distribution of pain.  (*Id*.)  Plaintiff argues that Dr. Reason's examination of July 30, 2015, states that Plaintiff's lumbosacral spine did not demonstrate a full range of motion.  (*Id*.)  Plaintiff argues that Dr. Reason's Medical Source Statement of October 2, 2018, states that Plaintiff had reduced strength in his lower back and lower extremities.  (*Id*.)  Plaintiff argues that Dr. Reason's examination of July 30, 2015, states that Plaintiff complained of numbness in his left leg.  (*Id*.)  Plaintiff argues that both Dr. Reason's examination of July 30, 2015, and Plaintiff's Emergency Room records of February 12, 2010, show a positive straight-leg-raising test.  (*Id*. at 9.)  Finally, Plaintiff argues that, although an ALJ is free to reject such evidence, the ALJ must explain the reasoning for the rejection and

4

failed to do so.  (*Id*. at 10.)

Second, Plaintiff argues that the ALJ's determination at Step Two of the five-step

evaluation process (described below in Part II.B. of this Decision and Order) that Plaintiff had a

non-severe mental impairment is unsupported by substantial evidence.  (Dkt. No. 13, at 11-14.)

More specifically, Plaintiff argues that, in reaching his conclusion that Plaintiff's mental

impairments caused no more than mild limitations on his ability to perform work-like functions,

the ALJ erred in the following two respects: (1) he improperly dismissed the March 1, 2018,

opinion of Plaintiff's treating provider, April Diles, PMHNP-BC, which shows that Plaintiff's

marked limitations in several broad areas of functioning are severe enough to meet or medically

equal a Listing; and (2) he ignored the subjective nature of Plaintiff's mental impairments, and

relied only on the benign mental status findings, in order to justify finding Plaintiff's mental

impairments non-severe at Step Two.  (*Id*.)

## 2.     Defendant's Motion for Judgment on the Pleadings

Generally, in its memorandum of law, Defendant asserts two arguments. (Dkt. No. 17, at

4-20.)  First, Defendant argues that substantial evidence supports the ALJ's finding that

Plaintiff's limitations did not meet Listing 1.04A.  (*Id*. at 4-13.)  More specifically, Defendant

argues, although the ALJ's Step Two analysis is admittedly brief in her fourth finding (which is

summarized above in Part I.C. of this Decision and Order), the limited medical evidence[2] shows

(and the ALJ's analysis at other steps of the five-step evaluation process shows) that Plaintiff

failed to meet the last three of the five elements of Listing 1.04A: (1) motor loss (atrophy with

---

[2]     Defendant argues that Plaintiff has not argued that the ALJ failed in any
way to develop the evidentiary record, and thus has waived such an argument.  (Dkt. No. 17, at
8.)

associated muscle weakness or muscle weakness); (2) sensory or reflex loss; and (3) positive straight-leg-raising test (sitting and supine).  (*Id*. at 6-9.)

With regard to the element of motor loss (atrophy with associated muscle weakness or muscle weakness), Defendant argues that the only portion of the record possibly supporting such a loss is Dr. Reason's Medical Source Statement of October 2, 2018, which states that Plaintiff had "muscle weakness" in the low back and lower extremities.  (*Id*. at 10-11.)  However, Defendant argues, Plaintiff has waived any challenge to the ALJ's finding that Dr. Reason's Medical Source Statement was unpersuasive by failing to assert that challenge in his brief;[3] and, in any event, Dr. Reason does not identify the affected muscles and describe the affect using the grading system 0 to 5, as the form requests.  (*Id*. at 11.)

With regard to the element of sensory or reflex loss, Defendant argues that the only portions of the record possibly supporting such a loss are (1) Dr. Reason's examination of July 30, 2015, indicating that Plaintiff complained of "numbness of the left leg," and (2) Dr. Reason's Medical Source Statement stating that Plaintiff has "sensory or reflect loss."  (*Id*. at 11.)  However, Defendant argues, there is no indication of weakness or motor loss in Dr. Reason's treatment report of July 30, 2015; and (as stated above) Plaintiff has waived any challenge to the ALJ's finding that Dr. Reason's Medical Source Statement was unpersuasive.  (*Id*.)

With regard to the element of a positive straight-leg-raising test (sitting and supine),

---

[3]      In support of this waiver argument, Defendant cites the following authorities: *Snyder v. Colvin*, 16-CV-0046, 2017 WL 61946, at *6 n.1 (N.D.N.Y. Jan. 5, 2017) (Kahn, J.) ("Because Snyder failed to raise this claim in her brief, the Court deems the issue waived") (citing, inter alia, *Norton v. Sam's Club*, 145 F.3d 114, 117 [2d Cir. 1998] ["Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."]); and N.D.N.Y. General Order No. 18 (stating that the Court considers issues "properly raised in the briefs").  (Dkt. No. 17, at 5.)

Defendant argues that the only three portions of the record possibly supporting such a test are as follows: (1) Dr. Reason's examination of July 30, 2015, stating "[s]traight leg pos[itive] on right"; (2) Plaintiff's Emergency Room records of February 12, 2010, noting that Plaintiff's "[l]eft [leg] lift is 20 degrees and positive for pain"; and (3) Dr. Reason's Medical Source Statement indicating that such testing was performed in both the sitting and supine position.   (*Id.* at 9-10.)  However, Defendant argues, neither of the first two records indicate whether testing was performed in *both* the sitting and supine position as required in Listing 1.04A; and (again) Plaintiff has waived any challenge to the ALJ's finding that Dr. Reason's Medical Source Statement was unpersuasive.  (*Id.* at 10.)

Second, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment that would cause more than a minimal limitation in his ability to perform basic mental work activities for numerous alternative reasons. (*Id.* at 13-20.)  More specifically, Defendant argues that, as an initial matter, Plaintiff does not satisfy his burden of establishing severity at Step Two of the evaluation process by relying on a *diagnosis* of a mental impairment without also relying on the *limitations* of that impairment.  (*Id.* at 14.)

In any event, Defendant argues, Nurse Diles is not an "[a]cceptable medical source" under 20 C.F.R. § 404.1502(a), which requires her to be a "[l]icensed psychologist" such as "[a] licensed or certified psychologist at the independent practice level";[4] and, even if she were an acceptable medical source, Defendant argues, for claims filed on or after March 27, 2017 (such

---

[4]     The Court notes that Defendant also argues that another reason Nurse Diles is not an acceptable medical source because it appears she did not begin treating Plaintiff until May of 2016, after his date last insured (December 31, 2015).  (Dkt. No. 17, at 21.)

7

as this claim), the Commissioner "will no longer give any specific evidentiary weight (including

controlling weight) to medical opinions.  (*Id*.)

Moreover, the ALJ did not in fact rely only on benign mental status findings but relied

also on mental status examination findings from Plaintiff's visits to the Behavioral Health and

Wellness Center, which included the following: (1) findings of mild limitations of irritability and

a tendency toward isolation from others; (2) findings of mild limitations in concentrating,

persisting, or maintaining pace; and (3) findings of mild symptoms of depression and minimal

psychiatric abnormalities.  (*Id*. at 15-18.)[5]

Finally, Defendant argues that, even if the ALJ should have found Plaintiff's mental

impairment to be severe at Step Two of the evaluation process, any error was harmless because

the ALJ found another impairment (his low back condition) severe and then continued with the

remaining steps of the evaluation process (relying on the Medical-Vocational Guidelines, which

contemplate unskilled work involving only simple instructions and usual work situations in a

---

[5]      The Court notes that, in response to Plaintiff's reliance on *Stacey v. Comm'r of Soc. Sec.*, 799 F. App'x 7, 11 (2d Cir. 2020), for the holding that it would be improper for an ALJ to rely on only the objective findings of a doctor to find the plaintiff's mental impairments non-severe at Step Two when the same doctor simultaneously concluded that those mental impairments were severe, Defendant argues that *Stacey* did not so hold: rather, Defendant argues, *Stacy* expressly found that "[t]he ALJ did not rely on–or even refer to–any . . . mental status evaluations [of the plaintiff's treating physicians finding his mental status to be 'normal'] in rejecting [the] opinion [of one of the plaintiff's treating physicians] regarding [the plaintiff's] [in]ability to concentrate."  (Dkt. No. 17, at 18.)  In any event, Defendant argues, that "[t]here was no such logical disconnect in this case," because the mental status examinations expressly relied on by ALJ Koennecke (including the initial psychiatric evaluation of July 2015, by Michael Camillo, M.D., at Behavioral Health and Wellness Center, the practice of Nurse Diles) indicated that Plaintiff's mental health status was, according to the ALJ, "minimally abnormal through his date last insured."  (*Id*. [citing, inter alia, T. 358, which stated that Plaintiff's "[m]ood approached neutral, [and] does not appear to be severely depressed but is probably mildly depressed"].)

routine work setting).  (*Id*. at 20.)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence.  *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal

principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a

mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the

10

[Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

After carefully reviewing the parties' arguments, the Court grants Defendant's motion (and denies Plaintiff's motion) for each of the numerous alternative reasons stated in Defendant's memorandum of law (summarized above in Part I.D.2. of this Decision and Order), except one such reason (discussed below).  (Dkt. No. 17.)

With respect to Defendant's first argument (i.e., that substantial evidence supports the ALJ's finding that Plaintiff's limitations did not meet Listing 1.04A), the Court adds to Defendant's reasoning only the following analysis.  Defendant is correct that authority exists for the point of law that a challenge to the existence in the gap in the record may be waived by a plaintiff (especially when counseled).[6]  Here, Plaintiff's memorandum of law is devoid of any such challenge.  (*See generally* Dkt. No. 13.)  Also devoid of such a challenge is the transcript of the administrative hearing, at which Plaintiff appeared through counsel.  (*See generally* Dkt. No. 10, at 34-50.)  However, even if the Court were not to rely on Defendant's waiver argument, it

---

[6]      *See Whipple v. Astrue*, 479 F. App'x 367, 370 (2d. Cir. 2012) ("Insofar as Whipple now faults the ALJ for failing to obtain, over Whipple's objection, the opinions of his treating physician, Whipple failed to raise this claim before the magistrate judge or the district court. We therefore deem the issue forfeited."); *Snyder v. Colvin*, 16-CV-0046, 2017 WL 61946, at *6 n.1 (N.D.N.Y. Jan. 5, 2017) (Kahn, J.) ("Because Snyder failed to raise this claim [that the ALJ should have sought additional information explaining Dr. Novak's 'unexplained and vague' opinion regarding disability] in her brief . . . , the Court deems the issue waived . . . ."); N.D.N.Y. General Order No. 18 at ¶ C(1)D ("The issues before the Court are limited to the issues properly raised in the briefs").

would accept first argument for the other reasons stated by Defendant (e.g., that Dr. Reason does

not identify the affected muscles and describe that affect with regard to the element of motor

loss, and that Dr. Reason does not indicate weakness or motor loss with regard to the element of

sensory or reflex loss).

Defendant is also correct to the extent he argues that the straight-leg test must be positive

with regard to both legs *at the same time*.[7]  Here, each of the two positive test results regarded

different legs at different times.  (T. at 230 [Dr. Reason examination of July 30, 2015]; T. at 271

[Emergency Room record of February 12, 2010].)  Conspicuously absent from each report is the

fact that both legs tested position at the time.  However, again, even if the Court were not to rely

on such a simultaneousness requirement, it would accept Defendant's argument regarding the

straight-leg test for the other reasons stated by Defendant (that neither of the first two

examination reports they reference indicate that testing was performed in both the sitting and

supine position, and that Plaintiff has waived any challenge to the ALJ's finding that Dr.

---

[7]        *See, e.g., Kujtim M. v. Kijakazi*, 21-CV-0205, 2022 WL 296521, at *4 (D. Conn.
July 27, 2022) ("Courts in the Second Circuit have held that, to satisfy this Listing, all of its
criteria must be 'simultaneously present on examination and continue, or be expected to
continue, for at least 12 months.'"); *Ramirez Morales v. Berryhill*, 17-CV-6836, 2019 WL
1076088, at *4 (W.D.N.Y. Mar. 7, 2019) (holding that "the claimant must also demonstrate that
all five criteria were met simultaneously and for the necessary duration"); *Mansoori v. Comm'r
of Soc. Sec.*, 17-CV-1161, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019) ("[A]ll of the
requirements of Listing 1.04(A) must be simultaneously present on examination and continue, or
be expected to continue, for at least 12 months, in order for a disorder of the spine to meet the
Listing at step three."); AR 15-1(4), *Radford v. Colvin: Standard for Meeting the Listing for
Disorders of the Spine with Evidence of Nerve Root Compression*, 80 F.R. 57418-02 (2015),
2015 WL 5564523(F.R.), at *57420 ("Our policy is that listing 1.04A specifies a level of severity
that is only met when all of the medical criteria listed in paragraph A are simultaneously present .
. . .  On the other hand, when the listing criteria are scattered over time, wax and wane, or are
present on one examination but absent on another, the individual's nerve root compression would
not rise to the level of severity required by listing 1.04A.").

Reason's Medical Source Statement was unpersuasive).[8]

With respect to Defendant's second argument (i.e., that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment that would cause more than a minimal limitation in his ability to perform basic mental work activities), the Courts adds to Defendant's reasoning only the following analysis.

The Court respectfully disagrees with Defendant's argument that Nurse Diles is not an "[a]cceptable medical source" under 20 C.F.R. § 404.1502(a).  Granted, Defendant is correct that authority exists for the point of law that a Board-Certified Psychiatric-Mental Health Nurse Practitioner (PMHNP-BC) is not a "[l]icensed psychologist" under 20 C.F.R. § 404.1502(a)(2).[9] However, such a nurse practitioner has been held to be a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title," for purposes of "claims filed . . . on or after March 27, 2017," under 20 C.F.R. § 404.1502(a)(7).[10]

_____

[8]        The Court notes that also waived was any argument by Plaintiff that the ALJ should have sought clarification regarding whether first two examination reports regarded testing that was performed in both the sitting and supine position.

[9]        *See, e.g., Michael K. v. Saul,* 18-CV-3165, 2019 WL 7819554, at *5 (E.D. Wash. July 31, 2019) ("Under the regulations in effect at the time of Plaintiff's application [on December 19, 2014], a psychiatric mental health nurse practitioner was not considered an "acceptable medical source."); *Knott v. Comm'r of Soc. Sec.*, 18-CV-1226, 2019 WL 4143885, at *9 (N.D. Ohio June 27, 2019) (finding that "Plaintiff has not demonstrated that Mr. Tudhope, a Psychiatric Mental Health Nurse Practitioner, is a 'treating source' within the regulation's definition," for purposes of the claim filed by Plaintiff in May 2015); *Martin v. Comm'r of Soc. Sec.*, 17-CV-2554, 2019 WL 937364, at *10 (N.D. Ohio Jan. 14, 2019) ("Yip is a 'Psychiatric Mental Health Nurse Practitioner-Board Certified (PMHNP-BC) . . . , which was not considered an acceptable medical source at the time of his applications [on Feb. 25, 2015] . . . .").

[10]       *See, e.g., Daniel H. v. Kijakazi,* 20-CV-2597, 2021 WL 5370140, at *5, n.7 (S.D. Ind. Nov. 18, 2021) ("On October 17, 2019, a treating psychiatric-mental health nurse practitioner, Hillary House, assessed . . . Claimant . . . . Nurse House is considered an acceptable medical source who is able to give a medical opinion according to the new regulatory scheme for

Having said that, the Court agrees with Defendant's alternative arguments regarding Nurse Diles (i.e., that even if Nurse Diles were an acceptable medical source Defendant need no longer give any specific evidentiary weight to her medical opinions, and that as a threshold matter Plaintiff fails to satisfy his burden at Step Two by failing to rely on the *limitations* of his impairment). The Court also agrees with Defendant's subsequent alternative arguments regarding the ALJ's finding that Plaintiff did not have a severe mental impairment (i.e., that the ALJ did not in fact rely only on benign mental status findings, and that any error in not finding Plaintiff's mental impairment to be severe was harmless). *See, supra*, Part I.D.2. of this Decision and Order.

For all of these alternative reasons, the Court must grant Defendant's motion and deny Plaintiff's motion.

**ACCORDINGLY**, it is

**ORDERED** that the decision of Defendant is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

---

claims—such as Claimant's here—that are filed on or after March 27, 2017."); *Dawn Z v. Soc. Sec. Admin. Comm'r*, 18-CV-0072, 2018 WL 5659912, at *3 & n.6 (D. Maine Oct. 31, 2018) (rejecting Defendant's argument that a "psychiatric mental health nurse practitioner . . . was not an 'acceptable medical source" under Defendant's regulations, because "[t]he rules and regulations . . . provide that advance nurse practitioners are acceptable medical sources for purposes of claims filed on or after [March 27, 2017]"); *cf. Luna v. Soc. Sec. Admin.*, 19-CV-1414, 2020 WL 5549318, at *12, n.3 (N.D. Ohio Aug. 28, 2020) ("As the parties point out, 20 C.F.R. § 404.1502(a) was prospectively amended, effective March 27, 2017, to include as acceptable medical sources 'licensed advance practice registered nurses,' but it has no bearing here because Luna filed her claim on February 23, 2017.").

Dated: August 8, 2022
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge